IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**KIMBERLY H.,**

    **Plaintiff,**

v.                                               Case No.: 3:24-cv-00228

**LELAND DUDEK,**
**Acting Commissioner of the**
**Social Security Administration,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

    This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross motions for judgment on the pleadings as articulated in Plaintiff's Motion and Brief in Support, (ECF Nos. 6, 7), and the Commissioner's Brief, (ECF No. 8).

    The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings, (ECF No. 6), be **DENIED**; the Commissioner's

1

request for judgment on the pleadings, (ECF No. 8), be **GRANTED**; the Commissioner's decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

I.   **Procedural History**

On December 21, 2020, Plaintiff Kimberly H. ("Claimant") protectively filed for DIB, alleging a disability onset date of June 19, 2020 due to "severe chronic low back pain, scoliosis, Chronic Epstein Barr Virus, depression, anxiety, lupus, chronic fatigue/fibromyalgia, GERD, insomnia, osteoarthritis left hip, neck and shoulder pain, neuropathy, and Sjogren's." (Tr. at 262, 267, 309). After the Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration, Claimant filed a request for an administrative hearing, which was held on May 19, 2023, before the Honorable Amy Benton, Administrative Law Judge (the "ALJ"). (Tr. at 36-62). By written decision dated June 27, 2023, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 14-35). The ALJ's decision became the final decision of the Commissioner on March 5, 2024, when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 5). Claimant filed a Motion for Judgment on the Pleadings, (ECF No. 6), and Brief in Support, (ECF No. 7), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 8). The time period within which Claimant could reply to the Commissioner's response has expired. Consequently, the matter is fully briefed and ready for resolution.

## II. Claimant's Background

Claimant was 53 years old on her alleged disability onset date through her date last insured. (Tr. at 110). She communicates in English, has a high school education, and previously worked as a medical records clerk. (Tr. at 58, 308, 310, 311).

## III. Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"), found at 20 C.F.R § Pt. 404, Subpt. P, App. 1. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the

3

limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting

with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a mental disorder described in the Listing. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through September 30, 2020. (Tr. at 20, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity from June 19, 2020, the alleged disability onset date, through her date last insured on September 30, 2020. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: lupus; fibromyalgia; degenerative disc disease of the cervical, lumbar, and thoracic spine with scoliosis and a syrinx; and hypertension. (*Id.*, Finding No. 3). The ALJ also considered

5

Claimant's GERD, insomnia, and depression, but the ALJ found that the impairments were non-severe. (Tr. at 20-22).

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 22-23, Finding No. 4). Thus, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: occasional climbing ramps and stairs; never climbing ladders or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; occasional exposure to hazards—such as unprotected heights and moving mechanical parts; and occasional exposure to extreme heat, extreme cold, and industrial types of vibration.

(Tr. at 23-28, Finding No. 5).

At the fourth step, the ALJ concluded that Claimant could perform her past relevant work as a medical records clerk. (Tr. at 28, Finding No. 6). Consequently, the ALJ decided that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (*Id.*, Finding No. 7).

## IV. <u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant argues that the ALJ failed to develop the evidence and consider her impairments under the combination of impairments theory. (ECF No. 7 at 9-15). In response, the Commissioner asserts that the ALJ properly evaluated the evidence and determined with the assistance of a vocational expert that Claimant could perform her past relevant work. (ECF No. 8 at 7-10). In addition, the Commissioner contends that substantial evidence supports the ALJ's determination that Claimant did not have an impairment or combination of impairments that met or medically equaled a listing. (*Id.* at 11-14).

## V. **Relevant Evidence**

The undersigned thoroughly examined the entire record. The evidence that is most pertinent to Claimant's challenges is summarized below.

### A. *Treatment Records*

On April 12, 2019, Claimant presented to Jason Ashworth, APRN, who worked in association with family physician Melin Moses, M.D. (Tr. at 529). Nurse Ashworth ordered a thoracic MRI to evaluate Claimant's complaints of back pain for the past two months. (*Id.*). Claimant was also diagnosed with neuropathy, GERD, and hypertension. (*Id.*). On July 18, 2019, Nurse Ashworth referred Claimant for physical therapy in the form of back massage. (Tr. at 527). On May 28, 2019, Claimant's left hip x-ray showed mild left hip osteoarthritis. (Tr. at 825).

Claimant's thoracic CR on August 26, 2019, showed mild degenerative changes and mild scoliosis. (Tr. at 491). On September 15, 2019, her thoracic MRI reflected thoracic spinal cord syrinx from T7 to T9 and shallow right paracentral disc osteophyte complex at T9-T10 without significant stenosis. (Tr. at 485). Claimant's cervical MRI revealed a central disc protrusion with canal stenosis at C5-C6, but there was no evidence of abnormal signal within the spinal cord. (Tr. at 487). Claimant continued to receive treatment for these chronic conditions through September 2020. (Tr. at 525, 606, 609, 610). On December 1, 2020, Claimant presented to rheumatology. (Tr. at 589-92). The rheumatologist indicated that she needed to rule out systematic lupus and additionally diagnosed Claimant with dry mouth, skin rash, and fibromyalgia. (Tr. at 592).

### B. *Opinions and Evaluations*

In a letter dated February 21, 2018, Dr. Moses wrote that he treated Claimant for lupus, and her symptomology included fatigue, lower back pain, and worsening left hip

7

pain. (Tr. at 807). He stated that "[d]ue to her worsening symptoms and Lupus she is in need of a disability." (*Id.*). The following year, on May 20, 2019, Claimant underwent an adult mental status examination. Licensed psychologist Tara Bias, M.A., documented that Claimant's observed mood was depressed with congruent affect, and her social functioning was mildly impaired. (*Id.*). However, all other mental status findings were within normal limits. (*Id.*).

On May 28, 2019, Stephen Nutter, M.D., performed an internal medicine evaluation of Claimant. He diagnosed her with chronic thoracic strain and lupus. (Tr. at 823). On June 18, 2019, Jason Ashworth, APRN, completed a Physical Functional Capacity Evaluation form. (Tr. at 482). He listed Claimant's primary diagnoses as chronic lower back pain and "Syrnix Cyst on thoracic." (*Id.*). Secondary diagnoses included depression, anxiety, nerves, and stress. (*Id.*). Nurse Ashworth stated that Claimant's other medical conditions were Epstein-Barr infection, lupus, chronic fatigue, fibromyalgia, GERD, and trouble sleeping due to chronic pain. (*Id.*). Nurse Ashworth opined that Claimant could frequently lift/carry 10 pounds, stand and/or walk less than two hours, and sit less than two hours in a workday. (*Id.*). In addition, he expressed that Claimant had to alternate between sitting and standing every hour, and her ability to push and/or pull with her upper extremities was limited. (*Id.*). Nurse Ashworth did not assess any postural, manipulative, communicative, or environmental limitations. (*Id.*). He deemed Claimant "disabled since January 2019." (*Id.*).

### C. *Claimant's Statements*

Claimant testified that, during the relevant period of June through September 2020, she suffered from lupus flares, although they were less frequent. (Tr. at 47). She had good and bad days. (Tr. at 49). On good days, she could do light grocery shopping,

but on bad days she had to stay in bed due to lupus pain. (*Id.*). Her medications caused her to feel sleepy and groggy. (Tr. at 48). Chronic back pain also interfered with her ability to sleep, and she suffered from neuropathy in her legs and rheumatoid arthritis. (Tr. at 50-51, 56). Claimant's chronic pain reportedly made her irritable, affected her ability to concentrate and think, and caused her to fall. (Tr. at 51). Claimant sometimes did not leave the house for weeks due to lupus, depression, and her combination of conditions. (Tr. at 53).

## VI. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree

9

with such decision." *Blalock*, 483 F.2d at 775.

## VII. Discussion

### A. *Duty to Develop the Evidence*

Claimant argues that the ALJ failed to fully develop the evidence regarding her multiple medical conditions. (ECF No. 7 at 9). Specifically, Claimant contends that, "[i]n this case, the ALJ failed to fully develop and consider [her] job duties." (*Id.*). She cites the activities that she performed in her past relevant work as a medical records clerk, medical records supervisor, record keeper, and code biller, as well as her testimony concerning her multiple impairments and limitations. (*Id.* at 9-11).

An "ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Id.* However, an ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Perry v. Astrue*, No. 3:10-CV-01248, 2011 WL 5006505, at *16 (S.D.W. Va. Oct. 20, 2011) (quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)); *see also Bret R. v. O'Malley*, No. 3:22-CV-00525, 2024 WL 1154032, at *6 (S.D.W. Va. Feb. 29, 2024), *report and recommendation adopted,* 2024 WL 1149267 (S.D.W. Va. Mar. 15, 2024); *Michelle C. v. Kijakazi*, No. 2:22-CV-00554, 2023 WL 5167012, at *9 (S.D.W. Va. June 14, 2023), *report and recommendation adopted,* 2023 WL 4541961 (S.D.W. Va. July 14, 2023).

The ALJ's duty is to ensure that the record contains sufficient evidence upon which the ALJ can make an informed decision. *Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253, 1269 (11th Cir. 2007); *Weise v. Astrue,* No. 1:08-cv-

10

00271, 2009 WL 3248086 (S.D.W. Va. Sept. 30, 2009); *Jones v. Saul*, No. 1:19-cv-275-GCM, 2020 WL 2411635, at *3 (W.D.N.C. May 12, 2020). Consequently, when examining the record to determine if it was adequate to support a reasoned administrative decision, the Court looks for evidentiary gaps that resulted in "unfairness or clear prejudice" to Claimant. *Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir. 1980).

Evidence is "insufficient" to evaluate a disability claim when the SSA does not have all of the information needed to make a determination. 20 C.F.R. § 404.1520b(b). The evidence is "inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." *Id.* If the evidence is insufficient or inconsistent, the ALJ can take a number of actions to develop the record, including recontacting medical sources for additional evidence or clarification, requesting additional existing evidence, or ordering a consultative examination. *Id.* The ALJ can also question witnesses, request evidence, and subpoena witnesses. *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272 (D. Md. 2003) (citing 20 C.F.R. §§ 404.944, 404.950(d)). The ALJ may order a consultative examination when the evidence as a whole is insufficient to allow the Commissioner to make a determination or decision on the claim or when there is an inconsistency in the evidence. *McKenzie v. Colvin*, No. CIV. TMD 13-1026, 2014 WL 3955588, at *12 (D. Md. Aug. 12, 2014) (citing 20 C.F.R. § 404.1519a(b)).

Ultimately, the claimant must establish a prima facie entitlement to benefits, and he or she consequently bears the risk of nonpersuasion. *Bell v. Chater*, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (citing *Seacrist v. Weinberger,* 538 F.2d 1054, 1057 (4th Cir. 1976) and 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as

11

the Secretary may require.")). Thus, the ALJ is not required to act as a claimant's counsel and can presume that the claimant's counsel presented the strongest case for benefits. *Bell v*, 1995 WL 347142, at *4; *Perry*, 2011 WL 5006505, at *15. The ALJ's duty to develop the record does not permit a claimant, through counsel, to rest on the record and later fault the ALJ for not performing a more exhaustive investigation. *Perry*, 2011 WL 5006505, at *15 (citations and markings omitted).

Reviewing Claimant's arguments, it is clear that the instant matter is reminiscent of a recent case in which the Court explained:

> Nothing in Claimant's brief provides any description, analysis, or explanation how his quoted testimony and list of impairments relates to the ALJ's analysis or any deficiencies therein. While Claimant asserts that the ALJ failed to properly develop the record in this case, ironically, *Claimant* has fundamentally failed to demonstrate—or even address *why*—further development by the ALJ was purportedly necessary [...] Particularly, Claimant has not addressed what additional development was needed in this case, the basis for asserting further development was necessary, or the basis for his assertion that the ALJ's failure to do so constituted error.

*James T. v. O'Malley,* No. 3:23-CV-00370, 2024 WL 4116622, at *12 (S.D.W. Va. Aug. 20, 2024) (Eifert, J.), *report and recommendation adopted,* 2024 WL 4113021 (S.D.W. Va. Sept. 6, 2024) (Chambers, J.); *see also Roger W. v. Colvin*, No. 3:24-CV-00129, 2024 WL 5329920, at *6 (S.D.W. Va. Dec. 30, 2024), *report and recommendation adopted,* No. CV 3:24-00129, 2025 WL 104549 (S.D.W. Va. Jan. 15, 2025).

Similarly, here, Claimant does not articulate any gaps in the evidence or identify how the record was insufficient for the ALJ to make a disability determination. The record contained, among other things, Claimant's work history report, significant testimony from Claimant and a VE concerning Claimant's past relevant work, treatment records, evaluations and opinions, and prior administrative findings. Ironically, Claimant's thorough citations to her own testimony contradict her argument that the record was

12

undeveloped. All of that testimony was on the record and considered by the ALJ. Claimant does not identify any further inquiries that the ALJ should have made or indicate what further evidence was necessary for the ALJ to render a decision on her disability application. Although Claimant lists pieces of medical evidence in her brief, she does not explain how any of it prompted further investigation. Her conclusory assertion that the ALJ failed to develop the record does not assert a viable challenge to the Commissioner's decision. Moreover, Claimant confirmed by counsel at her administrative hearing that she had no objections to the record before the ALJ. (Tr. at 40-41). Claimant had the opportunity to raise any issues concerning development of the record, but she declined to do so.

For those reasons, the undersigned **FINDS** that the record was sufficiently developed for the ALJ to make an informed decision on Claimant's application for benefits.

### B. *Combination of Impairments*

Claimant further argues that the ALJ failed to consider whether her combination of impairments satisfied the Listing. (ECF No. 7 at 13-15). A claimant should be found disabled at the third step of the sequential evaluation process when his or her impairments meet or medically equal an impairment included in the Listing. The Listing describes for each of the major body systems impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 404.1525. The Listing is intended to identify those individuals whose mental or physical impairments are so severe that they would likely be found disabled regardless of their vocational background; consequently, the criteria defining the listed impairments is set at a higher level of severity than that required to meet the statutory definition of disability. *Sullivan*

*v. Zebley*, 493 U.S. 521, 532 (1990). Because disability is presumed with a listed impairment, "[f]or a claimant to show that his impairment matches a [listed impairment], it must meet all of the specified medical criteria." *Id.* at 530. If the claimant is unable to demonstrate that his or her impairments, alone or in combination, match the criteria of a particular listed impairment, the claimant may still establish disability by showing that his or her impairments are medically equivalent to the listed impairment.

To establish medical equivalency, a claimant must present evidence that his or her impairment, unlisted impairment, or combination of impairments, is equal in severity and duration to all of the criteria of a specific listed impairment. *Id.* at 530; *see also* 20 C.F.R. § 404.1526. In Title 20 C.F.R. § 404.1526, the SSA sets out three ways in which medical equivalency can be determined. First, if the claimant has an impairment that is described in the Listing, but (1) does not exhibit all of the findings specified in the listing, or (2) exhibits all of the findings, but does not meet the severity level outlined for each and every finding, equivalency can be established if the claimant has other findings related to the impairment that are at least of equal medical significance to the required criteria. *Id.* § 404.1526(b)(1). Second, if the claimant's impairment is not described in the Listing, equivalency can be established by showing that the findings related to the claimant's impairment are at least of equal medical significance to those of a closely analogous listed impairment. *Id.* § 404.1526(b)(2). Finally, if the claimant has a combination of impairments, no one of which meets a listing, equivalency can be proven by comparing the claimant's findings to the most closely analogous listings; if the findings are of at least equal medical significance to the criteria contained in any one of the listings, then the combination of impairments will be considered equivalent to the most similar listing. *Id.* § 404.1526(b)(3).

14

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment ... A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan,* 493 U.S. at 531. The claimant bears the burden of production and proof at this step of the disability determination process. *Grant*, 699 F.2d at 191.

In this matter, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments in the Listing. (Tr. at 22). The ALJ explicitly stated that not only did Claimant not have any impairments that met a listing, but the record did not document medical findings that her impairments, individually or ***in combination***, equaled the level of severity and duration contemplated under any listed impairment. (*Id.*) (emphasis added). The ALJ articulated her analysis of listings 1.15 and 1.16, relating to disorders of the spine; listing 4.00(H)(1) in regard to hypertension; Social Security Ruling 12-2p and listings 1.15 and 14.09 regarding fibromyalgia; and listing 14.02 concerning systemic lupus erythematosus. (Tr. at 22-23).

Claimant does not develop her step three challenge in any manner, such as identifying errors in the ALJ's analysis of the above listings or asserting any listings that her combination of impairments supposedly satisfied. She broadly claims that the ALJ failed to consider the medical records of her longtime treating physicians. (ECF No. 7 at 15). However, Claimant does not elaborate upon how that argument is relevant to her challenge that her combination of impairments satisfied the Listing.

15

Claimant's conclusory assertion that her "medical and mental problems when combined, totally disable her and meet or exceed the combination of impairments listing" fails to assert a specific challenge to the Commissioner's decision. (*Id.* at 14). Claimant effectively waived this challenge by raising it only in a conclusory fashion. S*ee Nelson*, 2021 WL 1603812, at *8 n.3. The ALJ articulated her findings that Claimant's impairments did not satisfy the Listing criteria. (Tr. at 22-23). Claimant does not adduce any evidence or argument to dispute the ALJ's analysis. The decision documents the ALJ's well-supported rationale for finding that Claimant's impairments, alone or in combination, did not preclude her from engaging in substantial gainful activity. To the extent that the ALJ did not elaborate further on the analysis of Claimant's impairments in combination, the undersigned finds further elaboration was unnecessary because the required analysis clearly took place. Therefore, the undersigned **FINDS** that the ALJ complied with her duty under the applicable law to consider Claimant's impairments in combination at step three of the sequential evaluation.

### VIII. <u>Proposal and Recommendations</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 6); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 8); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code,

Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Reeder.

    The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

    **FILED:**  April 23, 2025

_____
Joseph K. Reeder
United States Magistrate Judge